DWM 08671 (AP/ec)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
TRF MUSIC INC.,

                      Plaintiff,

           -against-

ALAN ETT MUSIC GROUP, LLC., A&E TELEVISION
NETWORKS INTERNATIONAL, L.P., DISCOVERY
COMMUNICATIONS, INC., FOX ENTERTAINMENT GROUP,
INC., LIFETIME ENTERTAINMENT SERVICES,
THE WALT DISNEY COMPANY, HEARST CORPORATION,
AMAZON.COM, INC., ALAN ETT, ABBE RAVEN, DAVID
M. ZASLAV, KEITH RUPERT MURDOCH, ANDREA WONG,
ROBERT IGER, FRANK A. BENNACK, JR.,
JEFFREY P. BEZOS and DOES 1-10.

                      Defendants.
------------------------------------------------X

08 CV 8289

COMPLAINT

RECEIVED SEP 26 2008 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, TRF MUSIC INC. ("TRF"), complains of defendants, upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This is an action alleging copyright infringement arising under the Copyright Acts of 1909 and 1976, 17 U.S.C. §101 et. seq. This Court has subject matter jurisdiction over these federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338, subdivisions (a) and (b).

2. The amount in controversy is in excess of Seventy Five Thousand Dollars ($75,000); therefore jurisdiction is also proper under 28 U.S.C. §1332. This being an action under the copyright laws of the United States, jurisdiction is also proper under 28 U.S.C. §1338.

3. Plaintiff is a corporation duly incorporated in the State of New York, County of New York.

TRF Music Inc. v. Alan Ett Music Group, LLC. et al   Doc. 1

4. Defendant ALAN ETT MUSIC GROUP LLC ("AEMG") is a limited liability corporation organized and operated under the laws of California with a principal place of business in that state.

5. Defendant A&E TELEVISION NETWORKS INTERNATIONAL L.P. ("A&E") is a limited partnership organized and operated under the laws of one of these United States, with a principal place of business in New York, as a media company that uses Music Cues in the preparation and production of film, television and cable programs through one or more of its subsidiaries.

6. Defendant DISCOVERY COMMUNICATIONS, INC., ("DISCOVERY") is a corporation organized and operated under the laws of one of the United States, with a principal place of business in Maryland, as a media company that uses Music Cues in the preparation and production of film, television and cable programs through one or more of its subsidiaries.

7. Defendant FOX ENTERTAINMENT GROUP, INC. ("FOX") is a corporation, organized and operated under the laws of one of these United States, with a principal place of business in New York, as a media company that uses Music Cues in the preparation and production of film, television and cable programs through one or more of its subsidiaries.

8. Defendant LIFETIME ENTERTAINMENT SERVICES ("LIFETIME") is a joint venture organized and operated under the laws of one of these United States, with a principal place of business in New York, as a media company that uses Music Cues in the preparation and production of film, television and cable programs through one or more of its

subsidiaries.

9. Defendant THE WALT DISNEY COMPANY ("DISNEY") is a corporation duly organized in one of these United States, with a principal office in California, as a media company that uses Music Cues in the preparation and production of film, television and cable programs through one or more of its subsidiaries.

10. Defendant HEARST CORPORATION ("HEARST") is a corporation duly organized in one of these United States, with a principal office in New York, as a media company that uses Music Cues in the preparation and production of film, television and cable programs through one or more of its subsidiaries.

11. Defendant AMAZON.COM, INC. ("AMAZON") is a corporation duly organized in one of these United States with a principal office in the State of Washington and is an internet company that sells DVDs and VHS tapes through its website and/or internet site.

12. Defendant ALAN ETT is the owner and principal operator of defendant AEMG.

13. Defendant ABBE RAVEN is the Chief Executive Officer of defendant A&E.

14. Defendant DAVID M. ZASLAV is the Chief Executive Officer of defendant DISCOVERY.

15. Defendant KEITH RUPERT MURDOCH is the Chief Executive Officer of defendant FOX.

16. Defendant ANDREA WONG is the Chief Executive Officer of defendant LIFETIME.

17. Defendant ROBERT IGER is the Chief Executive Officer of DISNEY.

18. Defendant FRANK A. BENNACK, JR. is the Chief Executive Officer of defendant HEARST.

19. Defendant JEFFREY P. BEZOS is the Chief Executive Officer of defendant AMAZON.

20. Venue is proper in this district under 28 U.S.C. §§1391 and 1400(a) because plaintiff is incorporated in this state and defendants do business in interstate commerce within this district.

21. Plaintiff does not know the true names and capacities of those defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when their identity is ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants is in some manner legally responsible for the wrongful acts set forth herein. Each of the defendants designated herein as DOE is legally responsible for, in some manner, the events and happenings herein referred to and legally causing injury and damages to the plaintiff as alleged herein. Plaintiff will ask leave of this Court to amend this complaint to insert their true names and capacities in place and instead of the

fictitious names when, and if they learn of this information.

## INTRODUCTION

22. TRF is a New York corporation whose primary business involves licensing music to third parties for use in a variety of multi-media projects. More specifically, TRF functions as the exclusive administrator and/or publisher of various master sound recordings ("Masters") along with the underlying compositions embodied within the Masters ("Compositions") on behalf of itself and other copyright holders of such Masters and Compositions. For purposes herein, the Masters and Compositions shall collectively be referred to as the "Music Cues."

23. Plaintiff secures its exclusive right to administer and/or publish the Music Cues by contracting with the copyright owners of such Music Cues. Plaintiff then licenses the Music Cues to sub-licensors who in turn license the music to end-users for synchronization to film and television images. Plaintiff earns its revenues by collecting license fees directly from the sub-licensors as well as collecting publishing royalties through the public performance rights societies ASCAP and BMI. For the purpose of collecting the public performance royalties, plaintiff has a corporate sub-entity. The name of the wholly-owned sub-entity that is used in association with BMI, the performing rights society concerned in this matter, is Alpha Music Inc., which is referred to internally by BMI as Alpha Film Music on their music cue sheets. Plaintiff was at the time of the events at issue herein and/or is currently the

exclusive owner or administrator of the right, title, and interest in and to the administration of the copyrights in more than Fifty Thousand (50,000) Music Cues (the "Library"). As the exclusive administrator of all right, title and interest in and to the copyrights in the Music Cues contained in the Library, 17 U.S.C. §106(2) affords plaintiff the exclusive right to, among other things, license the Music Cues held in the Library to third-parties for exploitation. These applicable exclusive publishing administration agreements govern plaintiff's right to control the Music Cues in plaintiff's Library.

24. Plaintiff has a respected and recognized presence in the music licensing industry and has been a leading source of music used in television, radio and film for more than 70 years. Plaintiff's prominent clients include the major television networks, ABC, NBC and CBS, leading advertising agencies, cable television companies, such as CNN, ESPN, TBS and Nickelodeon, and film companies, such as Universal and Lions Gate.

25. Plaintiff alleges that defendants are engaged in the production, broadcasting and worldwide distribution of television programming, including the television shows at issue in this action and in the preparation, production and/or sale of DVDs and VHS tapes.

26. Plaintiff alleges that defendant AEMG is engaged in the sub-administration and sub-licensing of music, including

without limitation, plaintiff's Library, to a variety of purchasers or "end-users" including but not limited to all of the other corporate defendants.

27. Plaintiff alleges that the defendant AEMG sub-administered and sub-licensed at least Six Hundred and Nineteen (619) separate Music Cues from plaintiff's Library without securing authorization from plaintiff (the "Unauthorized Cues"), thereby violating plaintiff's copyright in each of the Unauthorized Cues held within the Library. Such Unauthorized Music Cues have been broken down by plaintiff indicating the shows, that the Unauthorized Music Cues appeared on. See Exhibit "1" for a breakdown of television networks and programs/episodes of the Unauthorized Music Cues and Exhibit "2" for a copy of the copyrights of the music cues used by defendants in the program/episodes on the aforementioned list.

28. Plaintiff is informed and believes, and therefore alleges, that defendants, other than defendant AEMG, used Music Cues, which plaintiff controlled the copyright to, in television shows they produced by improperly licensing the Unauthorized Cues from AEMG instead of from plaintiff.

29. Plaintiff believes and therefore alleges each defendant acted with, for and on behalf of the other defendants, and each of them acted jointly, in concert, and in participation with and for want of the other defendants concerning the matters herein alleged.

## FACTS

30. On or about July 15, 1991, plaintiff and AEMG entered into a written agreement in which plaintiff granted AEMG a one (1) year non-exclusive blanket license (the "First Blanket License") to sub-administer or sub-license to third-parties any Music Cues held within the Library during the term of the blanket license agreement in exchange for a fee, payable upon the commencement of the First Blanket License. The First Blanket License specifically gave AEMG the non-exclusive right to sub-license the Music Cues in the Library during the term to third parties for use in synchronizing such Music Cues in audio-visual productions distributed non-theatrically, as well as, on cable and free television.

31. On or about July 13, 1992, plaintiff and AEMG entered into a second blanket license agreement (the "Second Blanket License"). The Second Blanket License granted AEMG a two (2) year non-exclusive blanket license, commencing July 15, 1992 and ending July 14, 1994, to sub-administer or sub-license any Music Cues held within the Library during the term of the blanket license agreement in exchange for a fee.

32. On or about December 30, 1992, plaintiff and AEMG entered into a third blanket license agreement (the "Third Blanket License"). The Third Blanket License (which, however, was never executed by the parties) granted AEMG a

8

three (3) year non-exclusive blanket license, commencing July 15, 1994 and ending July 14, 1997, to sub-administer or sub-license any Music Cues held within the Library during the term of the blanket license agreement in exchange for a fee. The First Blanket License, Second Blanket License and Third Blanket License shall collectively be referred to as the "Blanket Licenses."

33. Following the expiration of the Third Blanket License, AEMG never contacted plaintiff about securing any additional rights to sub-administer or sub-license Music Cues in the Library for the period after July 14, 1997.

34. On or about June 11, 2003, plaintiff's representative, Michael Nurko, President and CEO of TRF Music, Inc. and Alan Ett, President of AEMG, met. At this meeting Alan Ett admitted that AEMG had continued to sub-license Music Cues in the Library after July 14, 1997, the expiration date of the Third Blanket License.

35. Additionally, at the June 11, 2003 meeting, plaintiff and AEMG agreed that AEMG would provide plaintiff with cue sheets (i.e., records of use of music on a particular program) so that plaintiff could review the uses and arrange to have AEMG properly account to plaintiff for fees due and owing in connection with the continued unauthorized uses of Music Cues held in the Library.

36. On or about August 20, 2003, plaintiff received two (2) boxes containing approximately five hundred (500) cue

9

sheets covering AEMG's sub-licenses and music placements, and a master list of all television programs and the year in which they were each produced. These cue sheets contained information pertaining to music placements that AEMG had secured for Music Cues contained in plaintiff's Library during the terms of the Blanket Licenses. In addition, the cue sheets contained information regarding AEMG's, as well as the other defendants', use of Unauthorized Music Cues after the July 14, 1997 expiration date of the Third Blanket License.

37. On December 23, 2003, upon request by plaintiff, AEMG faxed to plaintiff a list of specific dates for all productions done during 1997, and dates for some additional productions that were missing from the original master list.

38. In or about August 2003 through April 2004, plaintiff reviewed the cue sheets. Upon their review, plaintiff discovered that AEMG had placed at least Six Hundred and Nineteen (619) separate Unauthorized Cues in at least twenty-nine (29) television series, with at least a total of two hundred and twenty-nine (229) television episodes on at least eight television networks including A&E, Animal Planet, CBS, Fox, History Channel, Lifetime, MSNBC and TLC.

39. On or about April 13, 2004, plaintiff sent AEMG a letter notifying AEMG that many of the cue sheets sent to plaintiff in August 2003 were for television productions

that were done after the expiration of the Third Blanket License, which expired on July 14, 1997, and therefore plaintiff's Music Cues were used without plaintiff's permission. The April 13, 2004 letter also specifically provided a list identifying the Unauthorized Music Cues. In that letter, plaintiff requested that AEMG advise plaintiff which specific rights were conveyed to third-party users, so that plaintiff could perform its duty of issuing licenses covering the appropriate rights.

40. On or about May 10, 2004, AEMG sent plaintiff a letter in response to the April 13, 2004 letter. In the May 10, 2004 letter, Alan Ett admits that AEMG continued to exploit the Music Cues within the Library without having obtained plaintiff's permission.

41. On or about June 15, 2004, plaintiff sent AEMG a second letter in which plaintiff once again requested that AEMG advise TRF as to which particular rights were granted to each television show in which Unauthorized Cues were used. AEMG did not respond to plaintiff's request.

42. On or about July 16, 2004, plaintiff sent a third letter to AEMG explaining that since plaintiff had not received a response to the June 15, 2004 letter, plaintiff would have to contact the broadcasters and/or owners of the various television programs in order to begin the process of licensing with the broadcasters and/or end-users who exploited the Unauthorized Cues in their shows directly.

43. On or about July 29, 2004, plaintiff's representative, Eric Nurko, had a telephone conversation with Alan Ett regarding plaintiff's compensation for AEMG's use of the Unauthorized Cues. During this conversation Eric Nurko advised Alan Ett of the following: (i) AEMG was not entitled to renew their blanket license to cover AEMG's use of the Unauthorized Cues, as AEMG did not request such renewal of the blanket license prior to AEMG's use of the Unauthorized Cues, and accordingly, AEMG would have to license the Unauthorized Cues from plaintiff on an individual basis; and (ii) since AEMG used the Unauthorized Cues without having secured a license from plaintiff and without plaintiff's knowledge or consent, it is plaintiff's established business policy to consider AEMG's use of the Unauthorized Cues as theft of plaintiff's copyrights and, therefore, it is plaintiff's policy to charge ten (10) times the normal rate for each individual use of the Unauthorized Cues.

44. On or about August 9, 2004, AEMG sent a letter to plaintiff admitting that AEMG owes plaintiff a fee for AEMG's use of the Unauthorized Cues sublicensed by AEMG without plaintiff's written or oral consent.

45. Plaintiff alleges that AEMG sub-licensed the Unauthorized Cues to certain third-parties, including without limitation, television producers, with such Unauthorized Cues synchronized in time-relation no less than

Six Hundred and Nineteen times on at least Two Hundred and Twenty-Nine television episodes, which are distributed on home video and/or broadcast on A&E, Animal Planet, CBS, Fox, History Channel, Lifetime, MSNBC and TLC. Further, it is plaintiff's belief that defendants continue to exploit the Music Cues, including without limitation, the Unauthorized Cues without plaintiff's consent in cable and/or broadcast television programs and in the sale of DVDs and VHS tapes containing Unauthorized Cues.

## FIRST CAUSE OF ACTION

(Copyright Infringement)

46. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 of the complaint as if fully set forth herein.

47. This claim arises under the Copyright Acts of 1909 and 1976. The Unauthorized Cues contain material that was controlled by plaintiff at the time of the unauthorized use that is protected under U.S. copyright law.

48. Plaintiff was at the time of the events at issue herein and/or is currently the exclusive owner of the right, title, and/or interest in and to the administration of the copyrights in the Music Cues, including without limitation the Unauthorized Cues. As the exclusive administrator of all right, title and interest in and to the copyright of the Music Cues, 17 U.S.C. §106, affords plaintiff the exclusive right to, among other things, license the Music Cues to

13

third-parties for exploitation.

49. AEMG, with knowledge of plaintiff's existing copyrights in the Music Cues, infringed plaintiff's copyrights in the Unauthorized Cues by making placements for the Unauthorized Cues and sub-licensing the Unauthorized Cues to third party "end-users," defendants herein, in programs on television channels that include, without limitation, A&E, Animal Planet, CBS, Fox, History Channel, Lifetime, MSNBC and TLC and in production and/or the sale of DVDs and VHS tapes containing the music cues, without authorization, permission, license or consent from plaintiff.

50. Defendant AEMG knowingly, recklessly and willfully infringed, and continues to infringe upon plaintiff's copyrights in the Library, including without limitation the Unauthorized Cues and other valuable rights.

51. All defendants (except AEMG) vicariously infringed upon plaintiff's copyrights in the Unauthorized Cues because said defendants had the right and ability to supervise AEMG's placement and licensing practices but failed to do so, and as a result of using the Unauthorized Cues received obvious and direct financial benefit as a result of the exploitation in all media and formats of the Unauthorized Cues.

52. Plaintiff is further entitled to recover from defendants money for the damages plaintiff has sustained and

will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement alleged above. At present, the amount of such damages, gains, profits and advantages is at least Six Million Five Hundred and Fifty Thousand ($6,550,000.00) Dollars.

53. Plaintiff is further entitled to recover punitive damages against defendants because defendants acted willfully, maliciously and intentionally in blatant disregard of plaintiff's rights in the Unauthorized Cues by failing to secure the right from plaintiff to use the Unauthorized Cues.

54. Defendants have realized significant profits from their sub-licensing of the Unauthorized Cues. As a direct and proximate result of defendants' infringement of plaintiff's copyrights in the Unauthorized Cues, plaintiff has suffered and will continue to suffer significant damages.

## SECOND CAUSE OF ACTION

### (Accounting)

55. Plaintiff repeats and realleges each and every allegation set forth in paragraph 1 through 54 as though herein at length set forth.

56. AEMG has or is currently exploiting plaintiff's Library, without plaintiff's knowledge or consent, whereby AEMG has received revenues based on AEMG's unauthorized use.

15

57. As plaintiff is the exclusive administrator of the Library, plaintiff is entitled to collect any revenues accrued in connection with the Library, including without limitation, the Unauthorized Cues.

58. On or about August 20, 2003, plaintiff received music cue sheets that contained information concerning the Unauthorized Cues, which would allow plaintiff to fully assess the extent to which AEMG had licensed to third-parties without plaintiff's authorization. However, as the defendants still continue to exploit the Unauthorized Cues, plaintiff hereby demands a true, accurate, and correct accounting of the total number of uses of the Unauthorized Cues by defendants, and the required media rights for each use, in order for plaintiff to fully calculate the amount of fees due to plaintiff in connection with such exploitations by defendants.

59. As a result, plaintiff has been damaged, and has no adequate remedy at law.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

1) On its First Cause of Action:

(a) That an order be issued requiring defendants to deliver plaintiff for destruction, all copies of the Infringing Works, including all video cassettes, DVDs, or other materials used for the making or promoting of the Infringing Works in the possession or under the control of

defendants or any of their agents, servants, employees, attorneys, assigns, representatives or other parties in privity or in concert with them;

(b) The plaintiff be awarded compensatory damages in an amount to be proven at trial believed to be not less than Six Million Five Hundred and Fifty Thousand ($6,550,000.00) Dollars; or in the alternative, at plaintiff's election, plaintiff be awarded appropriate statutory fees pursuant to the Copyright Laws.

(c) That defendants provide plaintiff with an accounting and award of all gross and net profits defendants have realized as a result of their infringement of plaintiff's copyrights in the Music Cues, including but not limited to, the profits derived from the Unauthorized Cues, and all derivative works, including but not limited to television and film productions and from the sale of DVDs and VHS tapes;

(d) For interest on all damages at the rate permitted by law; and

(e) that attorney's fees be awarded.

2) On its Second Cause of Action: that an accounting be granted and damages be awarded accordingly, as allowed by law.

3) That the Court grant such other and further relief as it shall deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

Dated: New York, New York
       September 24, 2008

>                           PELTZ & WALKER
>                           Attorneys for Plaintiff
>
>                           By: _____
>                               Alexander Peltz
>                               222 Broadway - 25th Floor
>                               New York, New York  10038
>                               (212) 349-6775

TO:

F:\DATA\08671000\4112018.wpd